# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA *ex rel.* SAN DIEGO COMPREHENSIVE PAIN MANAGEMENT CENTER, INC., <br><br>                    Plaintiff,<br><br>  v.<br><br>JAYSEN EISENGREIN and SANDRA LOVE,<br><br>                    Defendants. | Case No. 24-cv-01481-BAS-BJC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>**(ECF No. 9)** |

    Before the Court are Defendants Jaysen Eisengrein and Sandra Love's ("Defendants") Motion to Dismiss Plaintiff San Diego Comprehensive Pain Management Center, Inc.'s ("SDCPMC" or "Plaintiff") Complaint. (Motion to Dismiss ("MTD"), ECF No. 9.) Plaintiff is a medical provider located in San Diego County that treats Medicare beneficiaries with chronic pain, and this is the third action stemming from a suspension of its Medicare payments. (Complaint ("Compl.") ¶ 7, ECF No. 1; *see also* MTD at 6:20–9:5.) In Case No. 21-cv-01739-BAS-WVG, this Court dismissed Plaintiff's suit for lack of subject matter jurisdiction because it did not show that it had exhausted administrative remedies or show that the exhaustion requirement should be judicially waived.

Several months later, Plaintiff filed a new action in state court, and Defendant Love removed the case under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (Compl. ¶ 12.)  In Case No. 22-cv-01648-BAS (WVG), this Court found Love properly invoked the federal officer removal statute and once more dismissed Plaintiff's suit for lack of subject matter jurisdiction, explaining that Plaintiff's state law claims recharacterize the previous claims the Court found were subject to the administrative exhaustion requirement.

In this instant matter, Plaintiff asserts the same two state law causes of action from Case No. 22-cv-01648-BAS (WVG) as the basis for this suit: first, Plaintiff alleges Defendants violated California's Insurance Fraud Protection Act ("IFPA"), Cal. Ins. Code § 1871; and second, Plaintiff alleges Defendants violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  Plaintiff again alleges Defendants perpetrated a fraudulent scheme to defraud Plaintiff but now argues that CMS's termination of the disputed temporary payment suspension constitutes a final agency decision, foreclosing any argument that this suit challenges the suspension itself or seeks a separate remedy requiring administrative exhaustion.  Accordingly, Plaintiff seeks to invoke the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The Court addresses Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1), (2) and (6).  For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss.

## BACKGROUND

**I.  The Medicare Act**

In 1965, Congress established the Medicare program under Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. §§ 1395–1395lll, commonly known as the Medicare Act.  The Medicare Act establishes a federally subsidized health insurance program for elderly and disabled persons administered by the United States Department of Health and Human Services ("HHS").  *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 675 (9th Cir. 2022).  The Secretary of HHS ("Secretary") delegates the administration of the

Medicare Act to the Centers for Medicare & Medicaid Services ("CMS")—an agency within HHS. *Id.*

Under Parts A and B of Medicare, the Government "pays health care providers on a fee-for-service basis at rates approved by" CMS. *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 909 (9th Cir. 2022). Medicare, however, "pays only for services that are 'reasonable and necessary.'" *Odell v. U.S. Dep't of Health & Hum. Servs.*, 995 F.3d 718, 720 (9th Cir. 2021) (quoting 42 U.S.C. § 1395y(a)(1)(A)). Therefore, providers first submit claims for reimbursement for services, the Government reviews those claims, and then the Government makes appropriate payments to the providers. 42 C.F.R. § 405.920

### A.     Administrative Contractors

From its inception, CMS has relied on contractors to administer claims and benefits related to the Medicare program. *Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 979 (Fed. Cir. 2019). The Medicare Act authorizes CMS "to facilitate the evaluation and reimbursement of claims for covered medical treatment" by contracting with private entities presently known as Medicare Administrative Contractors ("MACs"), which then review and "process those claims on the Government's behalf." *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 44 F.4th 838, 840 (9th Cir. 2022); *see also* 42 U.S.C. §§ 1395kk-1(a)(1), 1395u(a). Disputes arising under the Medicare Act often start with a contractor's decision to deny a provider's claim or pay a lower reimbursement amount. *See, e.g.*, *Odell*, 995 F.3d at 720; *Silverado Hospice, Inc. v. Becerra*, 42 F.4th 1112, 1117 (9th Cir. 2022).

Beyond enlisting contractors for claims processing, CMS uses outside entities for the congressionally mandated "Medicare Integrity Program." 42 U.S.C. § 1395ddd. For example, MACs' initial determinations are subject to post-payment review by, as in this instance, a Unified Program Integrity Contractor ("UPIC"). *Angel's Touch Inc. v. Becerra*, No. CV-21-08026-PCT-MTL, 2021 WL 2138766, at *1 (D. Ariz. May 26, 2021); *Hollywood Home Health Servs., Inc. v. Qlarant Quality Sols., Inc.*, No. CV 19-6817-DMG

(ASx), 2020 WL 3964792, at *1 (C.D. Cal. Feb. 27, 2020). A UPIC performs activities that "promote the integrity of" Medicare, such as auditing cost reports, reviewing service providers for fraud, and recovering "payments that should not have been made." 42 U.S.C. § 1395ddd(a), (b).

### B. Suspension of Medicare Payments

Medicare contractors also assist CMS when it suspends a healthcare provider's Medicare payments. 42 C.F.R. § 405.372. CMS can suspend payments "in whole or in part" when CMS determines that "a credible allegation of fraud exists against a provider or supplier." *Id.* § 405.371(a)(2). Moreover, CMS may suspend payments without notice where there is a "belief that giving prior notice would hinder the possibility of recovering" Medicare funds. *Id.* § 405.372(a)(3). In enacting a suspension, CMS:

(i) In consultation with [the HHS Office of Inspector General] and, as appropriate, the Department of Justice, determines whether to impose the suspension and if prior notice is appropriate;

(ii) Directs the Medicare contractor as to the timing and content of the notification to the provider or supplier; and

(iii) Is the real party in interest and is responsible for the decision.

*Id.* § 405.372.

With the assistance of the Medicare contractor, CMS must give the provider an opportunity to submit a rebuttal statement in writing as to why the suspension should be removed. *Id.* § 405.372(a)(3), (b)(2). Within fifteen days of receiving a rebuttal, CMS determines whether the suspension should stay in effect. *Id.* § 405.375(a). CMS's decision is not "an initial determination and is not appealable" within the Medicare Act's administrative appeals process. *Id.* § 405.375(c); *see also Maka Hospice v. Azar*, No. CV 19-7065 DDP, 2020 WL 4284972, at *2 (C.D. Cal. July 24, 2020) ("The [suspension of Medicare payments] is nothing more than a temporary measure necessary to maintain the status quo while the necessary facts are gathered and evaluated." (quoting *Clarinda Home Health v. Shalala*, 100 F.3d 526, 530 (8th Cir. 1996))); *see also* Section I.C, *infra*

(discussing Medicare Act's administrative appeals process). Instead, after suspending payments, CMS must reevaluate in 180 days whether good cause exists to continue the suspension. 42 C.F.R § 405.371(b). A fraud-based suspension may be further continued if the Department of Justice is pursuing a civil or criminal action. *Id.* § 405.371(b).

### C. Administrative Remedies

Although providers cannot appeal a temporary payment suspension, a suspension "may culminate in an appealable determination . . . if [reimbursement] claims are subsequently denied." 61 Fed. Reg. 63740, 63743 (Dec. 2, 1996). Furthermore, CMS may issue an overpayment demand if the agency concludes there was fraud. 42 C.F.R. § 405.372(c). An overpayment demand is a decision that triggers the Medicare Act's administrative appeals process. *See id.* §§ 405.904(a)(2), 405.375(c). Under this process:

> Before filing suit in court, a Medicare beneficiary must proceed through five levels of administrative review, described in regulations issued by CMS as follows: (1) an initial determination by the Medicare administrative contractor; (2) a redetermination by the Medicare administrative contractor; (3) reconsideration by a qualified independent contractor; (4) a hearing before an administrative law judge . . . ; and (5) review by the Medicare Appeals Council. If the beneficiary is dissatisfied with the Appeals Council's decision, he or she may then seek judicial review.

*Glob. Rescue Jets*, 30 F.4th at 911 (citations omitted) (citing 42 C.F.R. §§ 405.920, 405.940, 405.960, 405.1000, 405.1136).

## II. The Prior Actions

As previously mentioned, Plaintiff is a California corporation that operates a medical practice doing business in San Diego County, California. (Compl. ¶ 21.) Plaintiff provides treatment to Medicare beneficiaries, including pain management services. (*Id.*) In September 2021, Plaintiff stopped receiving payments from Medicare "without notice or explanation." (*Id.* ¶ 10.)

In late 2021, Plaintiff and two related medical practices sued, among others, HHS and Qlarant Integrity Solutions, LLC ("Qlarant") to remove the suspension and receive payments for their outstanding claims. *San Diego Comprehensive Pain Mgmt. Ctr., Inc. v.*

*Becerra*, No. 21-CV-01739-BAS-WVG, 2021 WL 5741465, at *1 (S.D. Cal. Dec. 2, 2021) ("*SDCPMC I*"). Qlarant "is the UPIC for Medicare and Medicaid Program Integrity in the Western jurisdiction, which includes California." (Declaration of Sandra Love ("Love Decl.") ¶ 7, ECF No. 9-2.) In *SDCPMC I*, Plaintiffs demanded that their suspension be immediately terminated and moved for a preliminary injunction. 2021 WL 5741465, at *1. After a hearing, the Court denied Plaintiffs' request for preliminary relief. *See id.* at *3. Soon after, the Court issued an order addressing exhaustion of administrative remedies under the Medicare Act. *Id.* at *3–6. Plaintiffs conceded "that they ha[d] not exhausted the administrative remedies available to them." *Id.* at *3. Hence, the Court analyzed whether waiving the exhaustion requirement was appropriate and found waiver was not warranted. *Id.* at *3–6. The Court consequently dismissed Plaintiffs' action in *SDCPMC I* for lack of subject matter jurisdiction. *Id.* at *6.

Several months later, Plaintiff filed a state court action bringing claims under the IFPA and the UCL and naming only Defendants Eisengrein and Love. *California ex rel. San Diego Comprehensive Pain Mgmt. Ctr., Inc. v. Eisengrein*, No. 22-CV-1648-BAS (WVG), 2023 WL 3806363, at *1 (S.D. Cal. June 2, 2023) ("*SDCPMC II*"). Eisengrein and Love worked for Qlarant. (Compl. ¶¶ 1–2, 23; Love Decl. ¶¶ 1–2; Declaration of Jaysen Eisengrein ("Eisengrein Decl.") ¶¶ 1–2, 4, ECF No. 9-1.) Love is the former President of Qlarant. (Love Decl. ¶¶ 1–2.) In addition, Eisengrein served as Qlarant's Program Director for its UPIC role. (Eisengrein Decl. ¶¶ 1–2, 4.)

In *SDCPMC II,* the Court noted that while Plaintiff litigated *SDCPMC I*, the administrative process for the suspension continued in the background. 2023 WL 3806363, at *3. Plaintiff had received a Notice of Suspension ("Notice") from Qlarant on behalf of CMS in October 2021. *See id.* at *3. After a rebuttal from Plaintiff, Qlarant sent two letters that Plaintiff alleges formed the basis of the *SDCPMC II* action. *See id.* In the first letter, dated February 8, 2022, Qlarant, referencing Medicare regulations and prior correspondence between the parties, informed Plaintiff that:

> As stated in the Notice of Suspension (Notice), dated October 22, 2021, the suspension of Medicare payments to SDCPMC is based on credible allegations of fraud. *See* 42 C.F.R. § 405.371(a)(2). Specifically, the suspension of SDCPMC's Medicare payments is based on, but not limited to, information that SDCPMC misrepresented services billed to the Medicare program. More particularly, CMS has credible allegations that SDCPMC submitted claims to Medicare for services that were medically unnecessary.

*See id.* Plaintiff again responded with a challenge to the suspension. *See id.* at *4. This response prompted another letter from Qlarant dated February 25, 2022. *See id.* Qlarant's second letter addressed Plaintiff's follow-up correspondence on behalf of CMS and reaffirmed it was not appropriate to end the suspension. *See id.*

In *SDCPMC II*, Plaintiff alleged that Defendants fraudulently schemed to deny them Medicare payments. *See id.* Pointing to the correspondence concerning their suspension, Plaintiff alleged that Defendants conspired to make false or fraudulent statements "for the purpose of denying compensation." *See id.* Plaintiff also contended that the false statements were "fraudulent denials of valid claims in violation of California law." *See id.*

Defendant Love removed the case to federal court and Plaintiff moved to remand. *See id.* at *4. Defendants also moved to dismiss the case for lack of subject matter jurisdiction and on other grounds. *See id.* at *10–13. The Court denied Plaintiff's motion to remand. *See id.* at *10. Furthermore, the Court granted Defendants' Rule 12(b)(1) motion to dismiss, finding that Plaintiffs' state law claims arose under the Medicare Act since they recharacterized previous claims from *SDCPMC I* that the Court found were subject to the Medicare Act's exhaustion requirement. *See id.* at *13. The Court also determined that waiving the exhaustion requirement was not appropriate. *See id.* ("Because Plaintiffs' state law claims are a disguised challenge to their Medicare payment suspension, the Court finds no reason to deviate from its prior reasoning [in *SDCPMC I*].").

### III. The Present Action

As set forth earlier, Plaintiff provides pain management services, including, among other treatment modalities, intrathecal pump treatment, "in which a device is implanted into a patient with chronic pain which delivers a continuous infusion of pain medication to

a targeted area of the spinal cord." (Compl. ¶ 7.) Plaintiff contends that "[intrathecal pump] treatment is expensive, relative to other pain treatment modalities . . . [and] [i]t is for this reason that [] Defendants have targeted the modality as something to be squashed." (*Id.* ¶ 8.)

Plaintiff asserts that "[o]n or about September 9, 2021, without notice or explanation, [] Plaintiff's Medicare payments stopped[,] and [it] was later determined to be a result of the Defendants' direction that Plaintiff [was] not [to] be paid for its services to insured patients." (*Id.* ¶ 10.) To support its position, Plaintiff relies on the February 8, 2022 letter from Qlarant which informed Plaintiff that "CMS has credible allegations that SDCPMC submitted claims to Medicare for services that were medically unnecessary." (*Id.* ¶ 11; *see also id.* Ex. A, ECF No 1-2 at 3.) However, Plaintiff alleges that "[i]n truth, the assertion in the correspondence and the contentions it contains are themselves fraudulent denials of valid claims in violation of California law, as explained, in part in . . . Plaintiff's Response Correspondence, dated February 25, 2022 (Exhibit "B")." (*Id.* ¶ 11; *see also id.* Ex. B, ECF No. 1-3 at 3–19.) Plaintiff alleges that Defendants "presented[,] or caused to be presented[,] knowingly false or fraudulent written or oral material statements in opposition to a claim for compensation for the purpose of denying compensation," as part of a "conspiracy to fraudulently deny valid claims for medical benefits." (*Id.* ¶¶ 13, 3.)

Ultimately, Plaintiff's Complaint in this present action is nearly identical to its Complaint in *SDCPMC II*. The only two substantively distinct allegations relevant to the Court's analysis are: (1) Plaintiff's assertion that "Medicare lifted the suspension[,] . . . [thereby] making a final agency action" (*id.* ¶ 12); and (2) Plaintiff's invocation of diversity jurisdiction (*id.* ¶ 17). Moreover, Plaintiff denies that "this action in any way seeks a remedy related to the suspension, [however] the issuance of that final agency action removes all doubt as to whether this action is a challenge of the suspension or some other remedy which requires an exhaustion of further administrative remedies within Medicare." (*Id.* ¶ 12.)

# MOTION TO DISMISS

Defendants move to dismiss pursuant to Rules 12(b)(1), (2) and (6). The Court focuses its discussion on Rule 12(b)(1) because this ground is decisive.

## I. Legal Standard

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute." *Id.* Once a party challenges the court's subject matter jurisdiction, "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

Moreover, "[a] Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In resolving a factual challenge, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Once a defendant challenges the truth of a plaintiff's factual allegations, the plaintiff bears the burden of substantiating jurisdictional allegations with competent proof. *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 (9th Cir. 2024).

Where, as here, a Rule 12(b)(1) motion is brought alongside a Rule 12(b)(6) motion, it is appropriate for the court to first consider and address the disputed jurisdictional issues under the former before analyzing the merits of a claim under the latter. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits." (citation omitted)). If, upon analysis of the Rule 12(b)(1) motion, the court finds it lacks subject matter jurisdiction over the action or a claim pressed therein, it need not address the merits issues

raised in the collateral Rule 12(b)(6) motion. *Toyota Landscaping Co., Inc. v. S. Cal. Dist. Council of Laborers*, 11 F.3d 114, 119 (9th Cir. 1993). Likewise, a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction "need not be considered in the absence of subject matter jurisdiction." *Red Hat, Inc. v. VirtaMove, Corp.*, No. 24-cv-04740-PCP, 2025 WL 1159869, at *6 (N.D. Cal. Apr. 21, 2025)

When a court lacks subject matter jurisdiction, it must dismiss the action, either upon a party's motion or sua sponte. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). "Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court." *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) (citation omitted).

**II.  Analysis**

**A.  Defendants Mount Facial and Factual Challenges to Subject Matter Jurisdiction**

As a threshold matter, the Court concludes that Defendants' motion presents both a facial and a factual attack to subject matter jurisdiction. Defendants expressly state that their motion relies on "the non-conclusory allegations in the Complaint, which are accepted solely for the purpose of this motion." (MTD at 6 n.1.) They argue that "CMS's subsequent termination of the payment suspension does not change the analysis [of subject matter jurisdiction in *SDCPMC II*]. Accordingly, this case should be dismissed for lack of subject matter jurisdiction." (*Id.* at 13:8–11.) Because Defendants accept the allegations as true but contend that, even so, those allegations fail to establish jurisdiction as a matter of law given the Medicare Act's exhaustion requirement, the Court construes this line of argument as a facial attack. *See Safe Air for Everyone*, 373 F.3d at 1039.

Defendants also mount a factual attack. They contend that, "to the extent this motion contests the factual basis of Plaintiff's assertions about subject matter jurisdiction, the Court need 'not presume the truthfulness of the plaintiffs' allegations.'" (*Id.* at 6 n.1 (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).) In support, they submit declarations

stating that the payment suspension was initiated at the request of HHS's Office of Inspector General and was approved and later lifted by CMS. (Eisengrein Decl. ¶¶ 7–9; Love Decl. ¶¶ 14–16.) Contrary to Plaintiff's position, these declarations support Defendants' arguments that Plaintiff's state law claims are intertwined with Plaintiff's claim for Medicare benefits and decisions taken by CMS—the real party in interest—rather than Defendants' decision-making authority. (MTD at 10:22–25; Eisengrein Decl. ¶ 9.) The Court therefore recognizes that Defendants have raised a factual attack on subject matter jurisdiction.

### B. Plaintiff's Complaint Recycles Allegations from *SDCPMC II*

As previously discussed, the present Complaint recycles nearly all of Plaintiff's allegations from *SDCPMC II*. Much of the Court's analysis in *SDCPMC II* applies to this case. *SDCPMC II*, 2023 WL 3806363, at *10–13. The Court will therefore address Plaintiff's argument that Medicare's lifting of the suspension constitutes a final agency decision and that "the issuance of that final agency action removes all doubt as to whether this action is a challenge of the suspension or some other remedy which requires an exhaustion of further administrative remedies within Medicare." (Compl. ¶ 12.)

### C. Termination of Medicare Payment Suspension Is Not a Final Agency Decision

First and foremost, the Court finds that the subject matter jurisdiction analysis conducted in *SDCPMC II* does not change simply because Plaintiff now alleges that Medicare has terminated the suspension of payments in effect at the time. Defendants correctly point out that Plaintiff provides no authority to support the assertion that lifting a payment suspension constitutes a final agency decision appealable to federal court. To the contrary, "[a] determination that a temporary suspension of payments should or should not continue is not an 'initial determination' subject to administrative appeal." *Maka Hospice*, 2020 WL 4284972, at *2 (citing 42 C.F.R. § 405.375(c)); *cf.* 42 C.F.R. § 405.924 (listing actions considered initial determinations). Therefore, Plaintiff may not seek judicial review without first obtaining a final agency decision subject to administrative appeal, and

"failure to exhaust one's administrative remedies deprives federal courts of subject matter jurisdiction over claims arising under the [Medicare] Act." *Glob. Rescue Jets*, 30 F.4th at 913 (quoting *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)). Plaintiff cannot circumvent this Court's prior ruling by characterizing the termination of a payment suspension as a final agency decision.

### D. Plaintiff's Claim Arises Under the Medicare Act

In its opposition, Plaintiff responds to Defendants' argument that the Court lacks subject matter jurisdiction because Plaintiff's claims "arise[] under the Medicare act." (Opposition ("Opp'n") at 1:18–20.) Plaintiff argues that "[t]his case does not entail review of the suspension or its lifting. Rather, it involves a determination of whether the Defendants committed insurance fraud." (*Id.* at 2:7–8.) Plaintiff emphasizes that "SDCPMC is not suing to get its claims paid. SDCPMC is not suing to set aside any action by Medicare. SDCPMC is, instead, seeking to enforce California law which prohibits the making of fraudulent statements in denial of insurance claims . . . ." (*Id.* at 1:20–22.)

The Court, however, is not persuaded by Plaintiff's line of reasoning. State common law and consumer protection claims cannot always escape the reach of the Medicare Act's exhaustion requirement. *See Glob. Rescue Jets*, 30 F.4th at 918–19; *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1113–15 (9th Cir. 2003). "[C]ourts have considered numerous cases that do not, on their face, appear to claim specific Medicare benefits or reimbursements yet have been found to arise under Medicare." *Kaiser*, 347 F.3d at 1112. Claims "arise under" the Medicare Act in two circumstances: "(1) where the 'standing and the substantive basis for the presentation of the claims' is the Medicare Act; and (2) where the claims are 'inextricably intertwined" with a claim for Medicare benefits.'" *Glob. Rescue Jets*, 30 F.4th at 917 (quoting *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 (9th Cir. 2010)).

"Most courts forego the 'standing and substantive basis' test in favor of the 'inextricably intertwined' test where plaintiffs [as here] do not invoke Medicare in their complaints." *Prime Healthcare Huntington Beach, LLC v. SCAN Health Plan*, 210 F.

Supp. 3d 1225, 1232 (C.D. Cal. 2016). "A claim is 'inextricably intertwined' if it does not involve issues separate from the party's claim that it is entitled to benefits and/or if those claims are not completely separate from its substantive claim to benefits." *Pinnacle Peak Neurology LLC v. Noridian Healthcare Sols. LLC*, No. CV-16-03614-PHX-DJH, 2018 WL 10357126, at *4 (D. Ariz. Mar. 13, 2018) (quoting *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 348 (3d Cir. 2012)). "In assessing whether a claim falls into either of these categories, courts must discount any creative pleading which may transform Medicare disputes into mere state law claims, and painstakingly determine whether such claims are ultimately Medicare disputes." *Id.* (internal quotations omitted).

"Indeed, a claim does not 'arise under' the Medicare Act only in 'certain special cases' where a claim is 'wholly "collateral"' to a claim for benefits and the injury suffered could not be remedied by the retroactive payment of benefits after the exhaustion of remedies." *Id.* (quoting *Heckler*, 466 U.S. at 618). "Moreover, courts have been clear that "[a] party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits . . . [if litigants were able to] obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review . . . would be severely undermined." *Id.* (citing *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 487–88 (7th Cir. 1990)); *see also Kaiser*, 347 F.3d at 1114 (explaining that *Bodimetric* holds litigants denied benefits cannot obtain federal jurisdiction by recharacterizing their claims under state or federal causes of action).

Here, a factfinder determining whether Defendants committed insurance fraud by providing "knowingly false or fraudulent . . . statements in opposition to a claim for compensation for the purpose of denying compensation," (Compl. ¶ 13), is inextricably intertwined with Plaintiff's claim for Medicare benefits and thus arises under the Medicare Act. At bottom, the inquiry does not involve issues independent of Plaintiff's entitlement to benefits; rather, the claims overlap with the substantive claim to benefits. In other words, resolving whether Defendants committed insurance fraud by "engag[ing] in a conspiracy

to fraudulently deny valid claims for medical benefits" is not wholly collateral to Plaintiff's claim for benefits. As Defendants observe, the Court's reasoning in *SDCPMC II* applies "with equal force to this case":

> [A] factfinder deciding the state law claims would have to determine whether the disputed payment suspension was either imposed: (a) at the direction of CMS for legitimate reasons under 42 C.F.R. § 405.371(a)(2); or (b) because of the Qlarant Employees' alleged scheme to "target innocent medical providers and contrive allegations of fraud that have no basis in fact[.]" (*see* Compl[.] ¶ 3)[;] *See also* 42 C.F.R. § 405.372 (CMS determines "whether to impose the suspension" and "[d]irects the Medicare contractor as to the timing and content of the notification to the provider").

(MTD at 10:26–11:5.)

Indeed, such an inquiry is inextricably intertwined with Plaintiff's substantive claim for benefits, as it cannot be resolved without addressing the validity of the benefits denial. Therefore, Plaintiff's claims "arise under" the Medicare Act for purposes of "Section 405(g) [which] provides 'the only avenue for judicial review' of a claim for benefits under the Medicare Act." *Glob. Rescue Jets*, 30 F.4th 905, 913 (9th Cir. 2022) (quoting *Heckler*, 466 U.S. at 617).

Furthermore, the Court is not persuaded that *Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496 (9th Cir. 1996) is applicable here, as Plaintiff contends. (Opp'n at 7:16–9:5.) In *Ardary*, the heirs of a deceased Medicare beneficiary sued a health maintenance organization providing Medicare benefits to the beneficiary, bringing state law claims for wrongful death based on a failure to authorize airlift transportation. 98 F.3d at 497–98; (Opp'n at 7:22–9:5.) The Ninth Circuit concluded that the state law claims were not "inextricably intertwined" with the denial of benefits because, although the claims were predicated on a failure to authorize airlift transportation, the plaintiffs were "*at bottom not seeking to recover benefits.*" *Id.* (citing *Heckler,* 466 U.S. at 614) (emphasis in original). Plaintiff relies on *Ardary* to argue that 42 U.S.C. § 405(h), which bars federal-question jurisdiction if the claim "arises under" the Medicare Act, "does not cover the

allegations of the Complaint" because Plaintiff is not "attempt[ing] to seek Medicare benefits." (Opp'n at 9:3–5.)

While it is true that Plaintiff is seeking monetary damages in the form of "all penalties and assessments allowable under section 1871.7(b)" of IFPA (Compl., Prayer A), the Ninth Circuit has indicated that "the type of remedy sought is not strongly probative of whether a claim" arises under the Medicare Act. *Kaiser*, 347 F.3d at 1112. Hence, "a suit seeking extra-Medicare monetary damages may also be a suit arising under Medicare." *Id.* Indeed, the Ninth Circuit narrowed the holding in *Ardary*, stating that "the *Ardary* analysis convinces us that its holding does not extend beyond patients and torts committed in the sale or provision of medical services." *Id.* at 1113; *Pinnacle Peak Neurology LLC*, 2018 WL 10357126, at *4–5. The Ninth Circuit subsequently concluded that "*Kaiser* also forecloses the [plaintiffs'] argument that, because they are not seeking reimbursement of lost benefits, their claims do not 'arise under' the Act." *Do Sung Uhm*, 620 F.3d at 1142. Thus, the Court is not persuaded by Plaintiff's argument that because it "does not seek payment of any Medicare claims," (Opp'n at 8:19), its claims do not arise under the Medicare Act. *See id.*; *see also Kaiser*, 347 F.3d at 1112.

Moreover, Plaintiff invokes diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1] (Compl. ¶ 17.) Yet even assuming arguendo that diversity could be established, 42 U.S.C. § 405(h) would still preclude subject matter jurisdiction in this case. In *Do Sung Uhm*, the Ninth Circuit affirmed dismissal of a Medicare case alleging diversity jurisdiction, reiterating that "[j]urisdiction over cases arising under Medicare exists only under 42 U.S.C. § 405(g), which requires an agency decision in advance of judicial review." 620 F.3d at 1139–41 (citing *Kaiser*, 347 F.3d at 1111). The Ninth Circuit held that "[t]he Act's

---

[1] The Court notes that the Complaint does not, on its face, establish diversity jurisdiction, as it alleges that Plaintiff is a California corporation (Compl. ¶ 22) and that Defendant Eisengrein is "an adult resident citizen of the State of California" (*id.* ¶ 23). These allegations do not demonstrate complete diversity, since both parties are alleged to be citizens of the same state. Eisengrein's declaration, however, contests this, attesting that he previously resided in Maryland and Arizona and now divides his time among Maryland, Florida, and Arizona. (Eisengrein Decl. ¶¶ 3, 10–14.) The Court therefore addresses diversity jurisdiction insofar as it is relevant to the question of subject matter jurisdiction.

exhaustion requirement, 42 U.S.C. § 405(h), makes judicial review under a related provision, 42 U.S.C. § 405(g), 'the sole avenue for judicial review' for claims 'arising under' the Medicare Act." *Id.* at 1140 (citing *Heckler*, 466 U.S. at 614–15).

Ultimately, this Court concluded in *SDCPMC II* that Plaintiff's UCL and IFPA claims arise under the Medicare Act, as they merely recharacterize the claims in *SDCPMC I*, which are subject to the Medicare Act's exhaustion requirement. *SDCPMC II*, 2023 WL 3806363, at *13; *SDCPMC I*, 2021 WL 5741465, at *1. Even assuming diversity jurisdiction could be established, consistent with this Court's prior determinations, waiver of the exhaustion requirement is not appropriate, and, absent a final decision issued by the Secretary, the Medicare Act deprives the Court of subject matter jurisdiction over Plaintiff's claims. *See SDCPMC II*, 2023 WL 3806363, at *13; *see also SDCPMC I*, 2021 WL 5741465, at *4–6 (holding that waiver of exhaustion was unwarranted because SDCPMC failed to establish collaterality, irreparability, or futility). Accordingly, the Court grants Defendants' Rule 12(b)(1) motion.[2]

## CONCLUSION

The Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 9). As in the prior actions, Plaintiff has not met its burden to establish that the Court has subject matter jurisdiction over this action. Accordingly, this case is **DISMISSED** without prejudice. *See Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004) (providing a dismissal based on lack of subject matter jurisdiction should be without prejudice).

**IT IS SO ORDERED.**

DATED: September 17, 2025

Hon. Cynthia Bashant, Chief Judge
United States District Court

---

[2] Because the Court dismisses this action for lack of subject matter jurisdiction under Rule 12(b)(1), it does not reach Defendants' remaining arguments under Rules 12(b)(2) and 12(b)(6), including whether Eisengrein and Love are the real parties in interest, whether the IFPA and UCL claims are incurably defective, whether personal jurisdiction is lacking, or whether the Complaint satisfies Rule 9(b)'s heightened pleading standard.